UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAFARI CHILDCARE INC. and JAMES OURTH, | ) | |
| | ) | |
| Plaintiffs, | ) | 17 C 8547 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SHIRLEY PENNY, DENICE MURRAY, CAROL | ) | |
| MORRIS, RICHARD ALEXANDER, JOEL LAMZ, | ) | |
| STANY D'SOUZA, EDIE WASHINGTON GURLEY, | ) | |
| JOSE ALEX MEDINA, FRANK NEUMAN, HELEN | ) | |
| CROSS, BETH GIRARDIER, MARY LIVORSI, | ) | |
| LESLIE PARELLO-HORTON, JODI | ) | |
| GOLEMBIEWSKI, JODINE WILLIAMS, EVA | ) | |
| CAMACHO, ROBERT MUSIAL, DONNA RIEDL, | ) | |
| GWENDOWLYN AMBER, COURTNEY | ) | |
| MARSHALL, and STACEY SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Safari Childcare Inc., which operates daycare centers in the Chicago area, and James

Ourth, Safari's owner, bring this suit under 42 U.S.C. § 1983 against twenty-one Illinois

Department of Children and Family Services ("DCFS") employees. Doc. 52. The court

dismissed without prejudice the original complaint on group pleading grounds. Docs. 43-44

(reported at 2018 WL 4144637 (N.D. Ill. Aug. 30, 2018)). In so doing, the court observed that if

Plaintiffs elected to file an amended complaint, they should "identify … which defendant is

alleged to have done what." 2018 WL 4144637, at *3. Plaintiffs took the court's direction to

heart, filing an amended complaint that has far greater detail—and far greater length—than the

original complaint. Defendants now move under Civil Rules 12(b)(1) and 12(b)(6) to dismiss

the amended complaint. Doc. 59. The motion is denied.

**Background**

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials permit. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

As the Illinois agency charged with regulating child care facilities, DCFS was responsible for inspecting and licensing Safari's daycare centers. Doc. 52 at ¶¶ 10-11; *see* 225 ILCS 10/1 *et seq.*; 89 Ill. Admin. Code § 407.40 *et seq.* Between 1991 and 2009, Plaintiffs did not experience any significant problems with DCFS. Doc. 52 at ¶¶ 8, 14, 17.

After Ourth complained and Safari staff called the police in 201 regarding certain DCFS employees' conduct while inspecting Safari facilities, various DCFS employees delayed action on Safari's applications to open three daycare centers and to expand operations at a fourth. *Id*. at ¶¶ 18-24, 31-34. As the delays continued, Safari enlisted Illinois elected officials to speak with DCFS about those applications. *Id.* at ¶¶ 34-36, 39. Safari's counsel told DCFS in January 2012

that it would commence a public campaign regarding its complaints about DCFS. *Id*. at

¶¶ 48-49. Between 2011 and 2013, Safari representatives met multiple times with DCFS staff to

discuss continuing issues with DCFS's inspection and licensing of its daycare centers. *Id*. at

¶¶ 40, 43, 50-53, 55, 59-60, 109-110.

As a result of Safari's continued engagement with Illinois elected officials and repeated

calls to the police about the conduct of DCFS employees during inspections of Safari facilities,

various DCFS employees secretly agreed to increase their inspection and enforcement efforts

against Safari. *Id*. at ¶¶ 53-54, 68-71, 102. Denice Murray, a defendant here and DCFS's

Deputy Director of Licensing from early 2012 to September 2016, orchestrated the retaliatory

scheme after a heated meeting on April 20, 2012 between DCFS representatives, Safari

representatives, and Illinois elected officials. *Id*. at ¶¶ 50, 53-54, 102, 184-185. The scheme

consisted of Defendants delaying the licensing process for Safari facilities; more frequently

conducting unannounced inspections; requesting parental contact information for random

surveys; failing to provide clear violation reports or realistic corrective plans; reversing DCFS's

position on the qualifications of Safari's teachers; demanding strict compliance with DCFS

licensing standards, rather than the reasonable compliance required by DCFS rules; and falsely

testifying in administrative hearings. *Id*. at ¶¶ 64, 71-74, 76, 80, 87-92, 102-103, 169, 368, 558,

623, 646.

Those increased enforcement efforts resulted in nine of Safari's eleven daycare centers

closing between 2015 and 2017:

- After DCFS in 2013 issued two notices of intent to revoke Safari's license for its
  McHenry daycare center, Safari closed the facility on May 29, 2015, prior to the
  conclusion of administrative proceedings. *Id*. at ¶¶ 108, 115, 132-133; Doc. 66-4.
  Despite this voluntary closure, a news report quoted DCFS employee Veronica
  Reza as stating, "Basically [the McHenry] license was revoked." Doc. 52 at ¶ 134

(quoting Katie Dahlstrom, *McHenry Child Care Center Loses License, Closes After State Probe*, Nw. Herald (May 29, 2015), https://perma.cc/T2Y6-8K8N).

- DCFS ordered Safari's Algonquin Road daycare center closed in late 2014, despite the facility's 95% compliance rating. *Id*. at ¶¶ 100, 125, 128-129. Although the state court vacated the closure order, thereby allowing the center to reopen in January 2015, a DCFS representative had already encouraged parents to use other daycare centers. *Id*. at ¶¶ 128-131. After further administrative proceedings, a state administrative law judge ("ALJ") revoked Safari's Mt. Algonquin license, Doc. 66-8 at 26, and the center closed on July 27, 2017. Doc. 52 at ¶ 160.

- Although Safari eventually received a license to open a daycare center in Highland Park, DCFS never renewed the license, so Safari closed the facility on June 30, 2015. *Id*. at ¶¶ 18, 23, 136, 550.

- DCFS issued a notice to revoke the license for Safari's Cary daycare center in May 2015 after reversing its position on whether Safari's teachers were qualified. *Id*. at ¶¶ 127, 137. Safari closed the facility on December 29, 2015. *Id*. at ¶ 137.

- DCFS's director upheld an ALJ's decision to revoke the license for Safari's East Dundee daycare center in May 2016 on the ground that it was not in strict compliance with DCFS standards. *Id*. at ¶¶ 138, 140; Doc. 66-5 at 1. Safari closed the facility on June 3, 2016. Doc. 52 at ¶ 140. Safari sought review in the state trial court, but voluntarily dismissed that action without prejudice in June 2017, Doc. 66-6 at ¶ 1, after the state appellate court affirmed the trial court's denial of its emergency motion to stay enforcement of the DCFS revocation order, *Safari Childcare, Inc. v. DCFS*, 2016 WL 7434440 (Ill. App. Dec. 23, 2016).

- After not receiving a response for some seven months on its timely application to renew the license for its Palatine daycare center, Safari closed the facility on October 31, 2016. Doc. 52 at ¶¶ 143-145.

- In January 2017, after Safari provided DCFS with the contact information for parents with children at its Belvidere daycare center, DCFS representatives told the parents that DCFS was shutting down all Safari facilities, and also demanded impromptu interviews with the Belvidere facility's staff. *Id*. at ¶¶ 148-150. As a result, Safari closed the facility in January 2017. *Id*. at ¶ 151.

- Having devoted considerable resources to challenging DCFS's enforcement actions and doubting that it could renew it Bensenville daycare center's license once the same DCFS representative involved the Algonquin Road facility's shutdown was assigned to handle the Bensenville facility, Safari decided to close the Bensenville facility in April 2017. *Id*. at ¶¶ 153-155. Despite the voluntary closure, the DCFS licensing officer considered Safari to have surrendered its Bensenville license "with cause." *Id*. at ¶ 155.

- After DCFS issued a notice of non-renewal of Safari's license for its Streamwood daycare center, an ALJ decided in 2017 that Safari failed to strictly comply with DCFS standards. *Id*. at ¶¶ 126, 156-157, 159; Doc. 66-7 at 27-28. Accordingly, Safari closed the facility on June 9, 2017. Doc. 52 at ¶ 159.

During the pertinent timeframe, non-Safari daycare centers with lower compliance ratings or other significant issues remained open and did not experience similar scrutiny. *Id*. at ¶¶ 101, 113, 122, 139, 162, 165, 205; *id*. at p. 115, ¶ 3. Several DCFS representatives told Plaintiffs that daycare license revocations are quite rare, which accords with Safari's experience before it began complaining in 2010 about DCFS's conduct. *Id*. at ¶¶ 158, 167.

## Discussion

The amended complaint brings a class-of-one equal protection claim, a First Amendment retaliation claim, and a civil conspiracy claim, all under § 1983. *Id*. at pp. 115-118. Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(1) on sovereign immunity grounds and under Rule 12(b)(6) on lack of notice, group pleading, claim preclusion (res judicata), failure to exhaust, statute of limitations, qualified immunity, and other grounds. Doc. 66 at 13-27. Although Defendants cast their sovereign immunity argument in jurisdictional terms, *id*. at 15-16, the Seventh Circuit "has clearly held that the question of sovereign immunity is not a jurisdictional one," so sovereign immunity is considered with Defendants' other Rule 12(b)(6) arguments and not under Rule 12(b)(1). *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 820, 822 (7th Cir. 2016) (collecting cases); *see also Cooper v. Ill. Dep't of Human Servs.*, 758 F. App'x 553, 554 (7th Cir. 2019) ("[T]he Eleventh Amendment does not curtail subject-matter jurisdiction … ."); *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (en banc) (same).

I.      **Whether the Amended Complaint Provides Adequate Notice of Plaintiffs' Claims**

As a threshold matter, Defendants contend that the amended complaint engages in group pleading and contains surplusage in violation of Rules 8 and 10.  Doc. 66 at 13-15, 21.  "The primary purpose of [Rules] 8 and 10(b) is to give defendants fair notice of the claims against them and the grounds supporting the claims."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (alteration omitted) (quoting *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011)).  Consistent with the fair notice requirement, and because § 1983 liability requires defendants to "be personally responsible for the alleged deprivation of the plaintiff's constitutional rights," *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018), § 1983 allegations must "put the defendants on notice of what exactly they might have done to violate [the plaintiff's] rights under the Constitution."  *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (holding that "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct," are insufficient in a § 1983 suit).

Contrary to Defendants' submission, the amended complaint—unlike the original complaint—provides adequate notice of Plaintiffs' claims and Defendants' alleged personal involvement in the alleged wrongdoing.  Although Defendants are correct that the amended complaint's "Common Facts" section largely treats them as an undifferentiated mass, Doc. 52 at ¶¶ 8-183, Defendants never address the "Individually Specific Allegations" section, which includes separate and detailed allegations against each of them, *id*. at ¶¶ 184-670.  Doc. 66 at 21; Doc. 75 at 9.  By failing to address the sufficiency of nearly 500 paragraphs of individually specific allegations, Defendants forfeit their argument that Plaintiffs engaged in impermissible group pleading.  *See Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 538 (7th Cir. 2017)

(considering contentions "wholly unsupported by developed argument citing the record and supporting authority" to be "forfeited"); *Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010) (explaining that "[i]t is not th[e] court's responsibility to research and construct the parties' arguments," including by "hunt[ing] through the record") (internal quotation marks omitted). Even setting aside forfeiture, the allegations specific to each individual Defendant—which range from ten paragraphs, Doc. 52 at ¶¶ 411-420 (Courtney Marshall), to forty-nine paragraphs, *id.* at ¶¶ 477-525 (Stany D'Souza)—eliminate any "uncertainty regarding who is [alleged to be] responsible for what." *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013); *see also Brooks*, 578 F.3d at 582 (considering allegations that named all defendants and "describe[d] [their] unlawful conduct" to have "adequately plead[ed] personal involvement").

Defendants also argue that the amended complaint—which alleges numerous injuries over some eight years—suffers from a fatal degree of surplusage. Doc. 66 at 13-15. However, "undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Stanard*, 658 F.3d at 797; *see Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal."). Because this suit concerns a multiyear series of inspections and enforcement actions pertaining to nine daycare centers and involving at least twenty-one DCFS employees, the amended complaint's broad scope is to be expected and does not violate Rules 8 or 10. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("Th[e] … complaint is not excessively long given the number of separate claims that the plaintiff is advancing.").

## II.     Whether Defendants Are Entitled to Sovereign Immunity

Defendants contend that Plaintiffs' § 1983 claims against the individual DCFS employees are in substance against DCFS, a state agency, and therefore are barred by the Eleventh

Amendment. Doc. 66 at 15-16. The Eleventh Amendment "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 370. When a government employee moves to dismiss an individual capacity suit on Eleventh Amendment grounds, the dispositive question is whether "the suit demonstrably has the identical effect as a suit against the state." *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) (internal quotation marks omitted). If so, the suit is barred by the Eleventh Amendment, and if not, the Eleventh Amendment does not apply. *See Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001) ("[A] suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is … barred.") (emphases deleted). The answer usually is no, as "sovereign immunity principles generally do not bar actions against state officials in their individual capacities." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 613 n.9 (7th Cir. 2002); *see Luder*, 253 F.3d at 1022-23 ("The general rule is that [suits against state officials in their individual capacities] are not barred by the [Eleventh Amendment], because the plaintiff is seeking damages from individuals rather than from the state treasury.").

Although Plaintiffs' allegations concern actions that individual DCFS employees allegedly took on DCFS's behalf, this suit does not "challenge the minimum requirements for operating a licensed daycare" in Illinois, Doc. 66 at 16, but rather maintain that the DCFS employees selectively enforced those rules against Safari daycare centers on constitutionally impermissible grounds. Doc. 52 at pp. 116 (alleging that Defendants' enforcement actions "were motivated by illegitimate animus against the Plaintiffs"), 117 ("Defendants' conduct of interfering with lawful First Amendment speech and petition by retaliating against Plaintiffs and targeting them for unlawful Code violations and enforcement proceedings violated Plaintiffs'

First Amendment rights."). That is the hallmark of individual capacity claims not barred by sovereign immunity. *See Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("Personal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labelled state action."). Moreover, as with their group pleading argument, Defendants' contention that this suit is in substance "against the state," Doc. 66 at 15-16; Doc. 75 at 9-10, fails even to address the nearly 500 paragraphs of allegations that specify which individual Defendants did what, Doc. 52 at ¶¶ 184-670. As a result, "[w]hen read fairly"—that is, when reading the "Individually Specific Allegations" *and* the "Common Facts" sections—"the complain[t] in this case do[es] not mount" the type of "generalized attack on" DCFS that the Eleventh Amendment bars, but instead alleges "that the manner in which the individual DCFS employees administered the reporting and investigatory scheme" violated Plaintiffs' constitutional rights. *Doyle*, 305 F.3d at 613 n.9; *see also Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1993) ("Insofar as the defendants are … being sued for damages in their individual capacity, the Eleventh Amendment does not bar the suit.").

## III.     Whether Claim Preclusion or Failure to Exhaust Bars Plaintiffs' Claims

Defendants contend that due to the DCFS enforcement proceedings against Safari, Plaintiffs' claims are barred by claim preclusion. Doc. 66 at 18-20. "In Illinois, claim preclusion requires (1) a final judgment on the merits, (2) identical causes of action, and (3) identical parties or their privies." *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 804 n.4 (7th Cir. 2018). Defendants' argument fails because they do not identify a final judgment that precludes Plaintiffs' claims.

A "final judgment" arising from DCFS enforcement proceedings—one that would bar Plaintiffs' § 1983 claims—could consist only of a judgment entered in an action brought by Plaintiffs in state court under the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq*. *See Dookeran v. Cnty. of Cook*, 719 F.3d 570, 576 (7th Cir. 2013) ("[A] federal civil-rights claim may be joined with an action in Illinois circuit court seeking judicial review of a decision by an administrative agency, which provides the full and fair opportunity to litigate necessary for claim preclusion to apply … .") (internal quotation marks omitted); *Durgins v. City of E. St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001) ("Because Illinois (a) permits the joinder of § 1983 claims with administrative-review actions, and (b) applies the doctrine of merger and bar, we have held that an administrative-review action forecloses any later § 1983 action in federal court arising out of the same transaction.") (collecting cases). Plaintiffs sought administrative review of one DCFS decision—the one that closed Safari's East Dundee daycare center—but the only orders entered in that case were the state trial court's denial of an interlocutory stay, the state appellate court's affirmance of that interlocutory denial, and Safari's voluntary dismissal. *Safari Childcare*, 2016 WL 7434440, at *2; Doc. 66-6. Defendants do not argue that those interlocutory orders amount to a preclusive final judgment, thereby forfeiting the point. *See Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. … This rule applies when a party fails to develop arguments related to a discrete issue … .") (internal quotation marks omitted). Even setting aside forfeiture, the denial of an interlocutory stay is not a "final judgment" for claim preclusion purposes. *See Baek v. Clausen*, 886 F.3d 652, 662 (7th Cir. 2018) ("An order is final … if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch

thereof.") (quoting *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012)); *Mitchell v. Wall*, 808 F.3d 1174, 1176 (7th Cir. 2015) ("[A] preliminary injunction has no preclusive effect … .").

Nor does an interlocutory order become a final judgment upon a voluntary dismissal without prejudice, which likewise is not itself a final judgment, *see Brown v. City of Chicago*, 771 F.3d 413, 414 (7th Cir. 2014) (noting the "general rule[] in Illinois" that "a voluntary dismissal is not res judicata" unless "the dismissal follows the rejection of all or some of the plaintiff[s'] claims on the merits"); *Dubina v. Mesirow Realty Dev., Inc.*, 687 N.E.2d 871, 875 (Ill. 1997) ("It is well settled that *final orders* entered in case become appealable following a voluntary dismissal.") (emphasis added), absent circumstances not present here, *see Kane v. Bank of Am., N.A.*, 338 F. Supp. 3d 866, 872 (N.D. Ill. 2018) (holding that an interlocutory order that "*is* final as to the matters it adjudicates" becomes preclusive upon a voluntary dismissal) (internal quotation marks omitted).

Defendants also contend that Plaintiffs failed to exhaust their administrative remedies by filing this § 1983 suit rather than pursuing administrative review actions in state court. Doc. 66 at 20. But at the hearing on their motion to dismiss the original complaint, Doc. 42, Defendants conceded that an administrative decision may be challenged in an administrative review action under state law *or* in a § 1983 suit. That concession was correct. *See Button v. Harden*, 814 F.2d 382, 384 (7th Cir. 1987) ("When [the plaintiff] lost before the hearing officer, he had two choices if he wanted to pursue his constitutional claim. First, … he could sue forthwith in federal court under [§ 1983]. … The second choice … was to file a suit in Illinois circuit court for judicial review of the hearing officer's determination."), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004); *Cooper v. Suter*, 834 F. Supp. 282, 286 (C.D. Ill. 1993) (noting that daycare center owners could have raised constitutional objections to a

DCFS administrative decision by "immediately fil[ing] [a] § 1983 claim" in federal court *or* by "fil[ing] suit in circuit court for judicial review of the hearing officer's findings"). Accordingly, Plaintiffs could bring their § 1983 claims in federal court without first filing an administrative review action in state court.

## IV.    Whether Plaintiffs' Claims Are Timely

Defendants contend that the statute of limitations bars Plaintiffs' § 1983 claims insofar as they concern events occurring prior to November 27, 2015—two years before Plaintiffs filed suit. Doc. 66 at 16-18. "Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) … is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (internal quotation marks omitted). Thus, to warrant dismissal on limitations grounds, "the plaintiff[s] must affirmatively plead [themselves] out of court; the complaint must plainly reveal that the action is untimely." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (alterations and internal quotation marks omitted); *see also Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[B]ecause affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense.") (alteration, citations, and internal quotation marks omitted); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.") (internal quotation marks omitted). Those circumstances are not present here.

"A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state," which in Illinois is two years. *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (citing 735 ILCS 5/13-202). However, "federal law determines when the claim accrues." *Ibid*. Under federal law, "[w]hen a wrong is ongoing rather than discrete, the period of limitations does not commence until the wrong ends." *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("Cumulative violations arise when it is not immediately apparent that the law is being violated. Accordingly, a plaintiff may delay suing until a series of wrongful acts blossoms into an injury on which suit can be brought.") (internal quotation marks omitted); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) ("The first instance of … [discriminatory] actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable.").

The amended complaint alleges an ongoing violation of Plaintiffs' constitutional rights that commenced with licensing delays and enhanced inspections in 2010, Doc. 52 at ¶¶ 23-24, 31, 33, continued with DCFS issuing notices of intent not to renew or to revoke Safari's licenses between 2013 and 2015, *id*. at ¶¶ 108, 123-127, and culminated in final administrative orders to close Safari facilities in 2016 and 2017, *id*. at ¶¶ 140, 159-160. It is at least plausible that Defendants' alleged unconstitutional scheme was not apparent or actionable until Safari lost most of its licenses or until DCFS permanently closed its centers, which did not occur until 2016. *Compare id*. at ¶¶ 133, 136 (Safari voluntarily surrendering two licenses prior to November 27, 2015), *with id*. at ¶¶ 137, 140, 145, 151, 155, 159-160 (Safari either deciding or being ordered to close seven facilities after November 27, 2015). Given that they continued to work with DCFS until Safari's centers began closing in rapid succession, Plaintiffs may reasonably have assumed

prior to 2016 that what they now allege was a coordinated campaign was instead a series of correctable errors. *See Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997) (noting that a cumulative violation occurs where the underlying conduct "could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period").

Defendants respond that "the applicable accrual date is … the date of [DCFS's] decision to revoke [Safari's] daycare licenses," *i.e.*, when DCFS issued notices of non-renewal or revocation. Doc. 75 at 3. But even the sole factually analogous case cited by Defendants, *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993), does not support their position, as it holds that the § 1983 claim accrued when the license was revoked, not when the notice of revocation issued. *See id*. at 510, 512 (holding that the plaintiffs' § 1983 claim accrued upon "the revocation of the license," which occurred "after a public hearing" which itself occurred after the plaintiffs were "charged … with violation of state laws"). Accordingly, because Defendants have not shown that the amended complaint "unambiguously establish[es] all the elements of the [limitations] defense," *Hyson*, 821 F.3d at 939, dismissal on limitations grounds is inappropriate.

## V. Whether Plaintiffs Have Sufficiently Pleaded Their § 1983 Claims

Defendants also contend that Plaintiffs fail to adequately plead each of their § 1983 claims. Doc. 66 at 23-27.

### A. Class-of-One Equal Protection Claim

"To prevail on a class-of-one equal protection theory, [the] plaintiff[s] must allege that [they] ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476,

480 (7th Cir. 2018) (internal quotation marks omitted); *see also Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) ("[C]lass-of-one plaintiff[s] must show (1) that [they] ha[ve] been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment.").  In the wake of the three-way split in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc), the Seventh Circuit has yet to resolve whether "the plaintiff[s] in a class-of-one claim must demonstrate only that there is no possible justification or rational basis for the defendant's actions, or if the plaintiff[s] must demonstrate a lack of justification *and* also present evidence of hostile intent or animus, or if the plaintiff[s] must demonstrate an absence of rational basis, which can be satisfied with evidence of animus." *Brunson v. Murray*, 843 F.3d 698, 706 (7th Cir. 2016) (citations omitted); *see also Fares Pawn*, 755 F.3d at 845 (noting that it is "[un]clear whether … class-of-one plaintiff[s] must also allege, and ultimately prove, that the government officials acted with some kind of bad motive not grounded in their public duties").  There is no need to take sides here because Plaintiffs have alleged lack of rational basis (*i.e.*, Safari alone was subject to a more demanding performance standard than DCFS rules required) *and* hostile animus (*i.e.*, the increased enforcement was retaliation for Defendants' complaints about DCFS) for why DCFS treated Safari differently from similarly situated daycare operators.

Defendants retort that they had a rational basis for stepping up enforcement against Safari: "the life, health, and safety standards for childcare institutions set forth in law and regulation."  Doc. 66 at 24.  That retort is a *non sequitur* because Plaintiffs challenge not the validity of the laws DCFS enforces, which of course are designed to protect children in daycare centers, but rather the strict compliance that DCFS employees required from Safari while demanding only reasonable compliance from everyone else.  *See Geinosky v. City of Chicago*,

675 F.3d 743, 748 (7th Cir. 2012) ("[The] general allegation that defendants 'intentionally treated plaintiff differently than others similarly situated' is sufficient here, where the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose."). And although Defendants argue that there cannot be hostile animus because they are legally entitled to investigate violations of DCFS standards, Doc. 66 at 24, Plaintiffs' factual allegations support the reasonable inference that Defendants engaged in an "orchestrated campaign of official harassment"—insisting on an exacting level of performance that no other daycare operator needed to meet—that was "motivated by" Plaintiffs' series of complaints and political pressure against Defendants, *Brunson*, 843 F.3d at 708. Accordingly, Plaintiffs' class-of-one equal protection claim survives dismissal.

### B.    First Amendment Retaliation Claim

For their First Amendment retaliation claim, Plaintiffs must allege that: "(1) [they] engaged in protected activity; (2) [they] suffered a deprivation likely to deter future protected activity; and (3) [their] protected activity was a motivating factor in the defendants' decision to retaliate." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). Apart from rehashing their statute of limitations argument, Defendants challenge only the third element—whether their increased inspection and enforcement activity against Safari was motivated by Plaintiffs' political speech and complaints to elected officials. Doc. 66 at 24-26. Defendants' causation argument fails at the pleadings stage, as "a retaliation claim only requires [allegations] that the plaintiff[s'] protected activity was at least *a* motivating factor for the retaliatory action." *Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018) (internal quotation marks omitted). Because it is plausible that Defendants stepped up their enforcement efforts against Safari due "at least in part" to what indisputably was protected speech, the First Amendment retaliation claim survives

dismissal. *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013) (holding that a First Amendment retaliation claim requires the plaintiffs to show "that the defendants were motivated, *at least in part*, by a desire to retaliate against [them] for [their] protected speech") (emphasis added); *see also Gomez v. Randle*, 680 F.3d 859, 866-67 (7th Cir. 2012) (reversing dismissal of a First Amendment retaliation claim because, "at this early stage in the proceedings," there was "[n]o other explanation" for the alleged adverse action).

Although Defendants note that "the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act," Doc. 66 at 25 (quoting *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016)), the court has already explained why the complaint does not "unambiguously establish," *Hyson*, 821 F.3d at 939, that the cumulative violation doctrine is inapplicable. *See* Section IV, *supra*. Moreover, just because some retaliatory conduct commenced outside the limitations period does not mean that the entire retaliation claim is time-barred. *See Mosely v. Bd. of Educ. of Chi.*, 434 F.3d 527, 535 (7th Cir. 2006) ("Even if the [retaliatory] incidents … occurred more than two years before [the plaintiff] filed this case, [the] complaint recounted other instances of harassment that took place within the two-year time limit.").

## C. Civil Conspiracy Claim

"To establish conspiracy liability in a § 1983 claim, the plaintiff[s] must [allege] that (1) the individuals reached an agreement to deprive [them] of [their] constitutional rights, and (2) overt acts in furtherance actually deprived [them] of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 304-05 (7th Cir. 2011) ("To establish the existence of a conspiracy, [plaintiffs] must demonstrate that the conspirators have an agreement to inflict injury or harm upon [them]."). Defendants assert that

the amended complaint fails to state a civil conspiracy claim because Plaintiffs do not detail each

DCFS employee's alleged agreement to participate in the conspiracy. Doc. 66 at 26-27. As

noted, Defendants' argument that the amended complaint's allegations are insufficiently detailed

ignores its nearly 500 paragraphs of "Individually Specific Allegations," Doc. 52 at ¶¶ 184-670,

thereby forfeiting the point. *See Wine & Canvas*, 868 F.3d at 538; *Gross*, 619 F.3d at 704-05.

Even setting aside forfeiture, Plaintiffs' allegations of a coordinated campaign among a group of

DCFS senior staff and licensing officials to subject Safari's daycare centers to debilitating

enforcement over several years are sufficient to survive dismissal. *See Geinosky*, 675 F.3d at

749 (refusing to dismiss a civil conspiracy claim where the complaint alleged "a pattern of

harassment by several officers over a period of months" where "members of the same police unit

allegedly acted in the same inexplicable way against a plaintiff on many different occasions");

*see also Beaman*, 775 F.3d at 511 ("Because conspiracies are often carried out clandestinely and

direct evidence is rarely available, plaintiffs can use circumstantial [allegations] to establish a

conspiracy … ."). Accordingly, like their equal protection and First Amendment claims,

Plaintiffs' civil conspiracy claim survives dismissal.

## VI.     Whether Defendants Are Entitled to Qualified Immunity

Defendants argue in the alternative that they are entitled to qualified immunity. Doc. 66

at 21-22. "The doctrine of qualified immunity protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. … A state official is

protected by qualified immunity unless the plaintiff shows: (1) that the official violated a

statutory or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotation

marks omitted). "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Id*. at 548 (internal quotation marks omitted); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) ("[W]e have cautioned that the rule that qualified immunity must be resolved at the earliest possible stage must be tempered by the notice pleading requirements of Rule 8.") (citations omitted).

The amended complaint alleges that Plaintiffs' protected speech activities—complaints to DCFS, the police, and Illinois elected officials—motivated Defendants to increase their enforcement efforts to a level that no similarly situated daycare operator experienced and that made it all but impossible for Safari to keep its centers open. Doc. 52 at ¶¶ 87, 102, 165; *id*. at p. 117. At all times relevant to this case, "[t]he law [wa]s settled that … the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) (alteration omitted) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *see also Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (explaining that because the First Amendment protects the "right to petition the government for the redress of grievances," a state agency's "growing hostility" and actions "to drive [a regulated entity] out of business" as a result of the entity's "numerous challenges to the state regulatory scheme" would violate the First Amendment). It follows that Defendants are not entitled to qualified immunity on the First Amendment retaliation claim, at least at the pleading stage.

For similar reasons, Defendants are not entitled to qualified immunity on the class-of-one equal protection claim. At all relevant times, the law was clear that government officials violate the Equal Protection Clause where (as allegedly occurred here) they invent noncompliance and

seek to punish regulated entities for improper reasons. *See Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) ("The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive[,] comes down hard on a hapless private citizen.'") (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563-65 (2000) (holding that a class-of-one plaintiff sufficiently alleged that she was "intentionally treated differently from others similarly situated and that there [wa]s no rational basis for the difference in treatment" where the defendant for no apparent reason demanded far more from her than "similarly situated property owners" after her "successful lawsuit" against the defendant). As a result, Defendants are not entitled at the pleading stage to qualified immunity on Plaintiffs' class-of-one claim, nor (for the same reasons) on their overarching civil conspiracy claim.

Defendants retort that Safari's substantial noncompliance with DCFS standards, not its First Amendment activities, motivated their escalating enforcement efforts against Safari. Doc. 75 at 8-9. Because that argument rests on alleged facts that are outside the pleadings and not subject to judicial notice (*i.e.*, Defendants' submission that Safari's daycare centers in fact were noncompliant), those alleged facts cannot justify dismissal under Rule 12(b)(6). *See Reed*, 906 F.3d at 551 ("Plaintiffs have plausibly alleged their constitutional rights were violated … when they were [disciplined] 'without justification.' On the face of plaintiffs' complaint alone, [the defendant] has not shown he is entitled to qualified immunity."). Defendants' alternative argument—that they are legally entitled to enforce compliance with DCFS standards, so a rational basis exists for Safari's treatment, Doc. 66 at 22—does not defeat qualified immunity given Plaintiffs' allegation that Defendants held Safari to a substantially higher standard in violation of DCFS regulations due to Plaintiffs' constitutionally protected activities. *See Gomez*,

680 F.3d at 866 ("An act in retaliation for the exercise of a constitutionally protected right is actionable under [§ 1983] even if the act, when taken for different reasons, would have been proper.") (alteration and internal quotation marks omitted); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983."). In sum, although "facts that are not yet in the record" may show that some or all Defendants are entitled to qualified immunity, the pleadings do not make that showing. *Reed*, 906 F.3d at 553 (internal quotation marks omitted).

## Conclusion

Defendants' motion to dismiss is denied. Defendants shall answer the amended complaint by August 19, 2019.

August 2, 2019

_____
United States District Judge