IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAFARI CHILDCARE INC. and JAMES OURTH, | |
| Plaintiffs, | Case No. 17-cv-08547 |
| v. | Judge Mary M. Rowland |
| SHIRLEY PENNY, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Safari Childcare Inc., and its owner, James Ourth, sued 23 employees of the Illinois Department of Children and Family Services. Plaintiffs bring a class-of-one equal protection claim, a First Amendment retaliation claim, and a civil conspiracy claim. Defendants move for summary judgement on all claims. [270] For the reasons stated below, Defendants' motion for summary judgment [270] is granted in part and denied in part.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are

1

material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

## OVERVIEW

Plaintiff Safari Daycare Centers, Inc. was a chain of childcare facilities in business in Illinois until 2021. Plaintiff James Ourth owned and operated the business. There were twelve former Safari facilities in the following locations: Belvidere, Bensenville, Cary, East Dundee, Hanover Park, Highland Park, Kensington, McHenry, Mt. Prospect (Algonquin), Mt. Prospect #2, Palatine, and Streamwood.

2

Defendants are twenty-three current and former employees of the Illinois Department of Child and Family Services (DCFS), the state agency authorized by statute to regulate daycare centers. DCFS promulgates rules for daycare centers, ensures compliance, and oversees licensing. DCFS is required by state law to conduct regular monitoring of all daycare centers in the state. 225 ILCS 10/5(g), (h); Rule 383.25. Per this mandate, daycare licensing representatives (DCLRs) employed by the agency visit facilities, sometimes at random. DCLRs are also tasked with investigating licensing complaints.

Ultimately, each Safari location closed, either voluntarily or through enforcement proceedings initiated by Defendants. Plaintiffs contend that, by initiating investigations and enforcement proceedings against various Safari centers, Defendants discriminated against Plaintiffs without any rational basis in violation of their Fourteenth Amendment rights under the Equal Protection clause, retaliated against them for exercising their First Amendment rights, and engaged in a civil conspiracy. Defendants move for summary judgment on all claims. [270].

## PROCEDURAL POSTURE

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). "We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as

3

undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

Defendants assert several problems with Plaintiffs' briefing and presentation of the facts. The Court is hard-pressed to recall such an egregious violation of the local rule. First, Plaintiffs' brief in response to Defendant's motion for summary judgment cites to raw record materials instead of their own statement of facts or their response to Defendants' statement of facts. *E.g.*, [288] at 8 (citing (DEFENDANTS0202471, Ex. 1051)). Defendants are correct that "[i]t has long and repeatedly been held that this practice violates Local Rule 56.1." *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 838 (N.D. Ill. 2013) (collecting cases and citing Local Rules).

Plaintiffs also repeatedly fail to object to Defendants' statement of facts with specific record citations as required by Local Rule 56.1(b)(3); Plaintiffs' response looks more like an answer to a complaint than objections backed by factual support. *E.g.* [289] at 5 ("Plaintiffs admit that Defendant Golembiewski was employed by DCFS . . . . Plaintiffs deny the content of the Cary License Monitoring Records and Corrective Plans . . . ). Failure to properly dispute a fact "in the manner dictated by the rule" results in its admission. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). As such, the Court deems Defendants' statement of facts admitted in its entirety.

Now to Plaintiffs' statement of additional facts. [290]. It is also non-compliant with the Local Rules. The Court allowed Plaintiffs one hundred (100) additional disputed

4

facts, which Rule 56.1(b)(3) requires to be "short, numbered," and material. Plaintiffs present one hundred (100) "facts" that are largely conclusory statements. These facts, functioning akin to headings, each contain *multiple* subparts chockful of record evidence. Many of these "sub-facts" are duplicative (so the Court cannot say with precision how many there are, but there are upward of 300) and include lengthy block quotes of deposition testimony and (improper) legal argument. *E.g.* [290] at ¶ 25 (filling three pages with unedited excerpts from Defendant Lamz's deposition). "Local Rule 56.1 is designed to isolate the material facts and put them before the court in an orderly and concise manner." *Graney v. Hartford Fin. Servs., Inc.*, 01-CV-5869, 2002 WL 31248509, at *2 (N.D. Ill. Oct. 4, 2002). Plaintiffs' statement falls far short of that goal. Defendants, understandably, do not dispute Plaintiffs' factual content, instead making blanket objections to the factual assertions and legal conclusions contained in Plaintiffs' filing. [305]

This Court has full discretion as to the extent it enforces the local rules and believes it would be within its discretion to strike this document wholesale. *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[T]he decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.") (quotations omitted). Still, for all its deficiencies, Plaintiffs' filing raises potential material disputed facts. The Court is unwilling to completely favor form over substance and disregard Plaintiffs' efforts to present relevant evidence with record support. The Court has thoroughly reviewed the facts raised in Plaintiffs' statement of additional facts in response to summary judgment to the extent that they are

material. The Court analyses them below and, to the extent they potentially create a genuine issue of material fact, the Court (1) requires Plaintiffs to refile a statement of additional facts that *strictly complies* with the Local Rules; and (2) allows Defendants time to respond.[1]

## ANALYSIS

### I. Class-of-One Equal Protection

Plaintiffs contend that Defendants treated Safari centers more harshly than other daycare centers by subjecting them to overly stringent investigation and enforcement procedures. Defendants argue that Plaintiffs do not rebut the rational bases for Defendants' actions, nor do Plaintiffs present meaningful comparators as required by Seventh Circuit precedent. Considering the facts in the light most favorable to Plaintiffs, the Court finds more briefing on this matter is required. The Court summarizes the applicable law below.

The Equal Protection Clause of the Fourteenth Amendment bars government classification of any private citizen "for arbitrary and irrational purposes," even when that person is not a member of a protected class. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To prevail on a class-of-one theory, Plaintiffs must show: (1) they were "intentionally treated differently from others similarly situated," and (2) there is no rational basis for the difference in treatment." *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024). "Class-of-one

---

[1] It is the Court's usual practice to set forth the undisputed and disputed facts of the case. Due to the procedural posture of this case, the Court will analyze additional facts as they are relevant to each count.

6

claimants carry a heavy burden," *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021). Courts only sustain such claims on "rare occasions." *Hammond*, 107 F.4th at 698, namely "to avoid turning every squabble over municipal services, of which there must be tens or even hundreds of thousands every year, into a federal constitutional case." *Brunson v. Murray*, 843 F.3d 698, 708 (7th Cir. 2016) (quoting *Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), aff'd, 528 U.S. 562 (2000)) (internal quotation marks omitted).

As for the first prong, the alleged comparator should be directly comparable in all material respects. *Navratil v. City of Racine*, 101 F.4th 511, 523 (7th Cir. 2024) (quoting *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010)). Whether comparators are similarly situated is often a question of fact, but summary judgment is warranted when "no reasonable factfinder could find the requirement is met." *FKFJ*, 11 F.4th at 588. Then, to meet the second prong, Plaintiffs must negate "*any* reasonably conceivable state of facts that could provide a rational basis" for the disparate treatment, even though it may not be the actual basis. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (emphasis added). The two parts of the test are logically intertwined: when a plaintiff offers a similarly situated comparator that received better treatment, it can shed light on whether the government's justification holds water. *See FKFJ*, 11 F.4th at 590; *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013).

The Seventh Circuit recently cleared up the role of personal animus in class-of-one claims in *Hammond*, 107 F.4th at 698. There, the Court held that a showing of

7

animus will never overcome a conceivable rational basis for government action. "It is only when courts can hypothesize *no rational basis* for the action that allegations of animus come into play." *Id.* In the rare cases "where animus is readily apparent," courts may relax the similarly situated requirement. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, No. 20-CV-00750, 2024 WL 1363733, at *9 (N.D. Ill. Mar. 29, 2024) (citing *Swanson*, 719 F.3d and *Geinosky*, 675 F.3d 743).

Defendants argue that the Court should grant summary judgment because Plaintiffs fail to put forward an adequate comparator and Defendants present rational bases for their actions. The challenging presentation of the facts prevent the Court from reaching the merits of these arguments. There is enough in Plaintiffs' statement of facts, however, that the Court prefers to settle this claim on the merits: emails sent by multiple Defendants indicate hostility and personal animus towards Safari.[2] This does not mean that the Court will rule one way or another, only that proper briefing from the parties is needed for the Court to do so.

In light of the briefing in this case described *supra*, the Court will allow Plaintiffs to file a statement of additional facts in response to summary judgment <u>that *strictly* complies with the Local Rules</u> to create a genuine dispute of material fact over

---

[2] In 2013, Murray assigned Safari to Morris as a "project" and when Morris requested whether she should track Safari's violations at Safari centers in another district, Murray immediately replied, "YESSSSSSSSSSSSSSSSSS ! ! ! ! ! ! ! ! ! ! ! ! ! ! !" *See* PSAF ¶¶ 1-1 and 1-2. In October 2016, Morris sent an email to Defendant Hampton that she kept a list of Safari closures on her bulletin board and "cross[ed] them off as they fall ! ! ! ! !" PSAF ¶ 6-2. She reported that she had "8 down, 6 to go." *Id.* When Safari Highland Park closed in August 2015, Morris emailed Defendant Alexader "Yaaaaah!", while a June 2017 ALJ decision refusing to renew the license of Safari Streamwood prompted Morris to exclaim, "Yessssss now on to mt prospect!" *Id.* ¶ 8-2. At the same time Defendant Livorsi wrote to a colleague about Safari East Dundee, "I want that license so bad I can taste it." *Id.* ¶ 47-1.[2] Defendant Hampton remarked after the closure of Safari Palatine, "Miracles happen everyday." *Id.* ¶ 6-2.

8

whether a) comparator daycare centers in the same locale, facing the same class of violations, and visited by the same Defendants were subjected to the same treatment and b) Defendants had a conceivable rational basis for their actions.[3] The Court will also allow Defendants ample time to respond.

## II. First Amendment Retaliation

Defendants also move for summary judgment on Plaintiffs' First Amendment retaliation claim. Plaintiffs allege that Defendants took official actions to punish Plaintiffs for calling law enforcement and legislators, retaliating against them for the exercise of their First Amendment rights.

A *prima facie* case of First Amendment retaliation requires a plaintiff to show: (1) he engaged in an activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) causation, that is, the protected activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *FKFJ*, 11 F.4th at 585 (quoting *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020)).

Courts use an objective test to analyze the second element, asking whether "the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); *see also Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) ("This

---

[3] The Court also reminds Plaintiffs that all § 1983 claimants must prove that *each defendant* sued in their individual capacity had "personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation and internal quotation marks omitted). To do this, Plaintiffs "must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)).

9

is an objective standard; it does not hinge on the personal experience of the plaintiff.").

To satisfy the causation element, a plaintiff "must allege a chronology of events from which the retaliation may plausibly be inferred." *Hazzard v. Springman*, No. 3:18-CV-50227, 2022 WL 17404491, at *3 (N.D. Ill. Dec. 2, 2022) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988)). A defendant can rebut a prima facie case by showing that they would have treated plaintiff the same absent the protected conduct. *Milliman v. County of McHenry*, 893 F.3d 422, 430-31 (7th Cir. 2018). The crux of the Court's task with a First Amendment claim is to "ensure that the protected activity and the adverse action are not wholly unrelated." *Whitfield v. Spiller*, 76 F.4th 698, 711-12 (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)) (internal quotation marks omitted). "Once a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Milliman*, 893 F.3d at 431 (quoting *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011)). Evidence of animus can be direct or circumstantial; the latter includes suspicious timing ambiguous oral or written statements, and hostile behavior towards other members of a protected group. *FKFJ*, 11 F.4th at 587.

Here, Plaintiffs' claim involves: a) phone calls by Safari staff to police officers during DCFS visits to Safari locations, and b) outreach from Safari staff to state legislators for help securing licenses and/or relief from enforcement procedures.

10

Plaintiffs claim that Defendants retaliated for these communications by targeting Plaintiffs with baseless code violations and enforcement proceedings. Defendants assume for the sake of summary judgment that Plaintiffs engaged in protected activity, so the Court moves to examine the second and third elements.

As with the equal protection count, Plaintiffs' legal arguments are largely underdeveloped and cite directly to exhibits as opposed to Plaintiffs' statements of fact. The Court is under no obligation to assemble Plaintiffs' claims for them by stitching together conclusory statements and raw facts. *Compania Administradora de Recuperacion v. Titan Int'l, Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial."). Plaintiffs cite to only three email chains from various Defendants that reference calls to police and/or legislators by Safari staff. If the Court did consider this evidence, even in the light most favorable to Plaintiffs, no reasonable jury could find causation.

First, on March 1, 2013, Safari staff called the police during a visit by Defendant Jodi Williams to Safari Streamwood. Later that day, Defendant Murray emailed Defendants Morris, Washington-Gurley and Amber, a request for "the chronology for Safari Day Care Centers where we have had problems. Plese [sic] include all incidents of police involvement . . ." [288] (P Resp.) (citing Def. Ex. 1051). Then came Murray's memorable "YESSSSSSSSSSSSSSSSSS ! ! ! ! ! ! ! ! ! ! ! ! ! ! !" to Morris's offer to compile additional reports. While this exchange may exhibit Murray's interest in pursuing

11

Safari, no rational jury could find that Plaintiffs' First Amendment activity motivated Murray's request for chronologies. In fact, Morris gave the chronology assignment to her subordinates by explaining to them that "Denice Murray today met with [Plaintiffs'] owners over chronic issues at one of their Cook Co. facilities and is putting together a case. She would like this information TUESDAY!!" PSAF ¶ 16-1. Murray's meeting with Safari representatives provides a reasonable explanation for her subsequent request for chronologies. Moreover, it is well-settled that "suspicious timing will rarely be sufficient in and of itself to create a triable issue." *Kidwell*, 679 F.3d at 966 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir.2005)) (internal quotation marks omitted). Here, two events—the call to police at Safari Streamwood and Murray's unrelated meeting with Safari—coinciding on the same day is not enough for a reasonable jury to infer that Murray retaliated against protected speech (assuming Plaintiffs engaged in protected speech).

Plaintiffs' next piece of evidence is comprised of two emails from Murray and Morris on March 5, 2013. In one message, Murray warned another DCFS employee that Safari "usually call[s] the legislator for whichever district the facility is in." [288] (P Resp.) (citing Def. Ex. 1221). Separately, Morris wrote to a colleague that Murray told Safari executives that "she is going to make them [Morris's] project (thus the need for the chronology)." *Id.* (citing Def. Ex. 1051). Again, the fact that these messages were sent on the same day as one another is not enough to prove Defendants' retaliatory motive. It does not even establish that Plaintiffs reached out to a legislator.

12

Plaintiffs lastly point to an email written by Defendant Alexander on March 27, 2012, asking whether DCFS would take "enforcement action on [a Safari] center in Cook [that] refused access to the licensing rep. and then called the police?" *Id.* (citing Def. Ex. 152). However, Plaintiffs omit that the referenced call to police occurred almost two years earlier, in June 2010. PSAF ¶ 9-2. A lapse of two years between protected speech and adverse action is too long to show retaliatory motive. *See Hazzard*, 2022 WL 17404491, at *5 (citing *Kidwell*, 679 F.3d at 965-66).

Taking the (improperly presented) facts in the light most favorable to Plaintiffs, Plaintiffs fail to present evidence that Defendants would not have investigated or sanctioned Safari centers if not for the calls to police or elected officials. Without this evidence, a reasonable jury could not find a causal connection between Plaintiffs' protected speech and Defendants' enforcement action. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). Plaintiffs have not met their burden to state a claim for First Amendment retaliation. *FKFJ*, 11 F.4th at 586. Defendants' motion for summary judgment on Count II is GRANTED.

### III. Civil Conspiracy

In Count III, Plaintiffs claim that Defendants conspired to deprive Plaintiffs of their equal protection and First Amendment rights. Defendants move for summary judgment because § 1985(3) does not provide a cause of action for either constitutional violation. The Court agrees with Defendants.

§ 1985(3) prohibits a conspiracy by two or more persons to deprive "any person or class or persons of the equal protection of the laws . . ." 42 U.S.C. § 1985(3). To succeed on a civil conspiracy claim, plaintiffs must first make out an underlying equal

13

protection violation and "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The Seventh Circuit expanded the class-based animus covered by § 1985(3) to include discrimination based on sex, religion, ethnicity, or political loyalty. *Brokaw*, 235 F.3d at 1024. The cause of action does not extend, however, to class-of-one equal protection claims. *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2015 WL 2444498, at *2 (N.D. Ill. May 20, 2015) (collecting cases), aff'd sub nom. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626 (7th Cir. 2018).

Here, Plaintiffs do not stake their claim on any "class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Their class-of-one equal protection claim therefore cannot anchor a civil conspiracy claim. And even if the First Amendment claim survived summary judgment, it does not satisfy the § 1985(3) requirement for a predicate equal protection violation. As a matter of law, Defendants' summary judgment motion as to Count III is GRANTED.

### IV. Qualified Immunity

Defendants also raise a qualified immunity defense, arguing that the law around class-of-one violations is not clearly established enough to put the remaining Defendants on notice that their actions were unconstitutional. Plaintiffs respond that Defendants' behavior was arbitrary and egregious enough to defeat the qualified immunity defense.

"Qualified immunity shields a government official from liability for civil damages unless his or her conduct violates a clearly established principle or constitutional

14

right of which a reasonable person would have known at the time." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (citations omitted). Courts use a two-part test for qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* These questions can be addressed in any order. *Id.*

Regarding class-of-one, the Seventh Circuit has held that "the only form of class-of-one equal protection right that is clearly established within our circuit involves government actors who single out a citizen for differential treatment with no objective rational basis for that difference and because of a vindictive or harassing purpose." *Frederickson*, 943 F.3d at 1062 (internal quotation marks omitted). Also on point here is the well-settled principle that factual disputes "prevent the resolution of the qualified immunity defense." *Ferguson v. McDonough*, 13 F.4th 574, 580 (7th Cir. 2021); *McClain v. Reynolds*, No. 23-2691, 2024 WL 3423218 (7th Cir. July 16, 2024).

As discussed above, the Court will allow additional briefing to allow Plaintiffs an opportunity to comply with the Local Rules and to allow Defendants to respond to Plaintiffs' facts. As the Court anticipates disputes over many material facts concerning Defendants' actions, the Court declines to decide whether they are entitled to qualified immunity at this stage.

## CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is granted in part and denied in part. The Court grants summary judgment as to Counts II and

15

III as to all Defendants. The Court denies summary judgment on Count I without prejudice to allowing further briefing as outlined in the opinion.

E N T E R:

Dated: September 11, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16