IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAFARI CHILDCARE INC. and
JAMES OURTH,

    Plaintiffs,

    v.

SHIRLEY PENNY, et al.,

    Defendants.

Case No. 17-cv-08547

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiffs Safari Childcare Inc., and its owner, James Ourth, sued 23
employees of the Illinois Department of Children and Family Services. [104] (Second
amended complaint). The Court previously granted summary judgment on Plaintiffs'
first amendment retaliation and civil conspiracy claims. [307]. The Court requested
further briefing on Plaintiffs' Equal Protection class-of-one claim. For the reasons
stated below, Defendants' motion for summary judgment on Plaintiffs' remaining
claim [313] is granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,
322 (1986). A genuine dispute as to any material fact exists if "the evidence is such
that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## PROCEDURAL POSTURE

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). "We have frequently

said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). "When a responding party's statements fails to dispute the facts set forth in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) (citation omitted). It is the litigants' duty to clearly dispute and provide the admissible evidence that proves or disproves the proffered fact. *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215, 219 (7th Cir. 2015). References to legal arguments—rather than presenting clear, undisputed material facts—to support a denial of a material fact is not contemplated by the rule. *Id*. (cleaned up).

Defendants again assert several problems with Plaintiffs' briefing and presentation of the facts. [331]. The Court is *once again* hard-pressed to recall such an egregious violation of Local Rule 56.1. This is true even though the Court specifically ordered Plaintiffs to file an additional statement of facts that "*strictly complie[d]* with the Local Rules to create a genuine dispute of material fact over whether a) comparator daycare centers in the same locale, facing the same class of violations, and visited by the same Defendants were subjected to the same treatment, and b) Defendants had a conceivable rational basis for their action". [307] at 8-9.

First, Plaintiffs do not respond to Defendants' statement of facts as required by the Rules. At top, Plaintiffs' responses impermissibly contain legal argument. In

3

addition, they cite evidence in an incoherent manner that does not explain how the cited material controverts the asserted fact. For instance, Plaintiffs' attempt to dispute Defendants' Fact Number 3 as follows:

> **Statement**: On January 11, 2017, DCLR Peterson notified Safari Belvidere that the daycare center license was deemed "surrendered with cause" after he had attempted to conduct license renewal monitoring visits on December 7, 2016, and again on January 9, 2017, and observed that the center was vacated each time. Exhibit 40, Belvidere License File Contact/License Entry Note, Bates DCFS 16228; Exhibit 41, Belvidere Surrender With Cause Letter, dated January 11, 2017, Bates DCFS 15935-36;

> [315] at 2.

> **Response**: Deny…. Plaintiffs[sic] Additional Material Facts (Disputed) Relating to Count I Equal protection, 'hereafter Pl. SOAMF" outline the disputed material fact, 'hereafter DMF' regarding Belvidere detail the actions of Defendant in issuing an unjust surrender with cause at Safari Belvidere. (Pl. SOAMF p. 64-66, DMF 29, para 29/1, 29/1, 29/3, 29/4) The specific defendants involved are also cited in that section. This is important because it controverts Defendants' Material Fact No. 3 thereby creating a genuine dispute regarding a material fact.

[326] at 2-3. This response (and endless more like it) fails to create a genuine dispute of material fact, as required. It further requires the Court to piece together Plaintiffs' response, which is similarly impermissible. Indeed, district courts are not required to "wade through improper denials and legal arguments in search of a genuinely disputed material fact." *Bordelon v. Chicago Sch. Reform Bd.*, 23 F.3d 524, 429 (7th Cir. 2000).

Plaintiffs' statement of additional facts fares no better—they utterly fail to comply with the Local Rules. *See e.g.* [327]. The Rules allow the non-moving party 40 additional statements of fact. LR 56.1(d)(5). Here, Plaintiffs did not seek to file

4

additional disputed material facts. Despite this, Plaintiffs present 106 facts that are largely conclusory statements. Although the facts are labeled 1-40, they actually function akin to headings, each containing *multiple* subparts chockful of record evidence. Many of these "sub-facts" are duplicative and include lengthy block quotes of deposition testimony and (improper) legal argument, including statements which are framed as a direct response to Defendants' legal memorandum. *See e.g.* [327] "Disputed Material Fact Specific to Safari Streamwood" at 91-94 (containing one disputed fact labeled 40 and 5 sub-parts labeled 40-1 through 40-5). "Local Rule 56.1 is designed to isolate the material facts and put them before the court in an orderly and concise manner." *Graney v. Hartford Fin. Servs., Inc.*, 01-CV-5869, 2002 WL 31248509, at *2 (N.D. Ill. Oct. 4, 2002). Plaintiffs' statement falls far short of that goal. Defendants, understandably, do not dispute Plaintiffs' factual content, instead making blanket objections to the factual assertions and legal conclusions contained in Plaintiffs' filing. [330].

The Court has full discretion as to the extent it enforces the local rules, and this Court believes it would be within its discretion to strike this document wholesale. *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[T]he decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.") (quotations omitted). Given that the Court previously explained Plaintiffs' deficiencies and afforded Plaintiffs an opportunity to correct them, the

Court deems Defendants' facts admitted [315][1] in full and strikes Plaintiffs' "Additional (Disputed) Material Facts" [327].

## FACTS

The Court takes the following facts from Defendant's undisputed statement of facts.[2] [315]. Plaintiffs owned twelve daycare centers. Each center closed for reasons discussed *supra*:

*Safari Belvidere*

Safari Belvidere operated as a daycare center from January 2014 through January 2017. *Id*. ¶ 1. On January 11, 2017, DCLR Peterson notified Safari Belvidere that the daycare center license was deemed "surrendered with cause" after he had attempted to conduct license renewal monitoring visits and observed that the center was vacated. *Id*. ¶ 3. Safari Belvidere was forced to vacate the property and cease operations due to hazardous conditions on the premises that the landlord refused to repair, including but not limited to a fire hazard and heating issue. *Id*. ¶ 4.

*Safari Bensenville*

Safari Bensenville operated as a daycare center from March 2010 through April 2017. *Id*. ¶ 7. DCLR Girardier attempted a monitoring visit at the location on July 25, 2017, and noted that the facility appeared to be closed. *Id*. ¶ 7. She sent Plaintiffs several correspondences requesting clarification about the center's status and its apparent closure. *Id*.

---

[1] Although Plaintiffs failed to dispute Defendants' statement of facts, Defendants' have the burden as the moving party to show that they are entitled to judgment as a matter of law.

[2] The Court assumes familiarity with the facts, *see* [307], expanding where relevant.

The Bensenville location landlord, Anchor Properties ("Anchor") sued Plaintiffs. *Id.* ¶ 9. Plaintiffs counterclaimed that they had been wrongfully evicted in April 2017 due to hazardous conditions Anchor failed to repair, including a fire hazard, a collapsed roof, and faulty plumbing that caused the toilets to spew sewage and other contents on a regular basis. *Id.* ¶ 9.

On November 2, 2017, Safari Corporate Representative Verteegh emailed Giraridier stating that Safari Childcare had not operated at that location since April 28, 2017, and requested license termination. *Id.* ¶ 8. Giradier sent a letter to Representative Versteegh and Plaintiff Ourth that the license for Safari Bensenville was deemed "surrendered with cause". *Id.*

*Safari Cary*

Safari Cary operated as a daycare center from March 2010 through October 2015. *Id.* ¶ 10. DCLRs Neuman, Parello-Horton, and Golembiewski visited the location for permit monitoring visits, annual license monitoring visits, to monitor corrective plans created with the center to correct substantiated violations, and to investigate licensing complaints. *Id.* ¶¶ 12-14. Given the numerous and continuous violations of the daycare licensing standards at Safari Cary, on May 22, 2015, the Department notified Ourth of its intent to refuse to renew its license. *Id.* ¶¶ 15-17.

On October 15, 2015, DCLR Golembiewski attempted to conduct an unannounced monitoring visit and observed the facility was closed. *Id.* ¶ 18. That same day, Safari's attorney Fred Nickl emailed DCFS stating Safari Cary closed the location due to a leasing issue, and it will not reopen. *Id.* On January 12, 2016, DCFS

issued a Final Administrative Decision finding that Safari Cary voluntarily closed its facility and abandoned its administrative appeal. *Id*. ¶ 19.

*Safari East Dundee*

Safari East Dundee operated as a daycare center from December 2011 through June 2016. *Id*. ¶ 20. Various DCLRs visited the location from approximately 2013-2016 for annual license monitoring visits, to monitor corrective plans and to investigate licensing complaint reports. *Id*. ¶¶ 23-26. There were numerous violations of the daycare licensing standards at East Dundee from 2011 through December 2015, and numerous corrective plans created to correct those violations. *Id*. ¶¶ 27, 29.

In 2013, DCFS notified Safari East Dundee of its intent to revoke its license. *Id*. ¶ 28. The letter provided that the "action is the result of the recent findings of licensing violation(s) and the conclusion you have failed to maintain minimum standards as prescribed by the Department." *Id*. In turn, East Dundee requested an administrative appeal of the decision. *Id*.

On May 27, 2016, the Director of DCFS issued a Final Administrative Decision adopting and incorporating the Administrative Law Judge's ("ALJ") findings of fact and conclusions of law revoking the East Dundee License. *Id*. ¶ 30. The ALJ specifically found that the "lists of violations [at Safari East Dundee] are numerous", and that the "violations were ongoing and compromised the health and safety of the children attending Safari. The Department on many occasions offered corrective plans and Safari would sometimes comply with those plans, however, within days of the original violations, Safari would once again be out of compliance. Safari was

either unwilling or unable to comply with the applicable standards." *Id.* The ALJ found that the licensing violations included staff/child ration violations, denying the DCLR access to the daycare center, employees lacking necessary background checks, having children in rooms that were not licensed, and inadequate maintenance of the outside play area. *Id.* East Dundee's license was revoked as of May 27, 2016, and it was ordered to cease operations by June 3, 2016. *Id.* ¶ 31.

*Safari Hanover Park*

Safari Hanover Park operated as a daycare center from January 2012 through January 2021. *Id.* ¶ 32. Hanover Park closed in 2021 due to lack of funding from the Illinois Network of Child Care Resources and Referral Agencies ("INCCRRA"). *Id.* ¶ 33.

*Safari Highland Park*

Safari Highland Park operated as a daycare center from April 2011 through August 2015. *Id.* ¶ 34. On August 5, 2015, Ourth sent a letter to Highland Park's assigned DCLR that the center was voluntarily surrendering its license due to its lease ending. *Id.* ¶ 36.

*Safari Kensington*

Safari Kensington operated as a daycare center from 1999 until June of 2021 when it closed due to lack of funding from the INCCRRA. *Id.* ¶ 37.

*Safari McHenry*

Safari McHenry operated as a daycare center from December 2010 through May 2015. *Id.* ¶ 42. DCLRs Neuman and Parello-Horton were assigned to conduct

annual license monitoring visits, conduct license amendment monitoring visits, to monitor corrective plans, and to investigate licensing complaints. *Id*. ¶¶ 45-46. Child Protection Investigator ("CPI") Musial was assigned to investigate allegations of child abuse and neglect at the McHenry daycare center in May of 2013. *Id*. ¶ 47. There were numerous documented violations of the daycare licensing standards at McHenry, and numerous corrective plans to correct those violations. *Id*. ¶ 49. On July 18, 2013, DCFS notified McHenry that it intended to revoke the center's daycare license. *Id*. ¶ 50.

On July 29, 2013, Ourth met with DCFS. *Id*. ¶ 51. As a result of that meeting, DCFS counsel sent Ourth a letter stating that the July 18, 2013, notice of intent to revoke McHenry's license was dismissed. *Id*. The letter further provided that all Safari daycare staff must cooperate fully with all DCFS investigatory matters, including complaint investigations, visits to ensure compliance with corrective plans, and monitoring visits to avoid reinstatement of enforcement activities. *Id*. It further provided that DCFS shall have access to the daycare facility in order to view and observe classrooms, conduct interviews and perform any and all investigatory actions. *Id*. DCFS specifically requested all records for each facility to be maintained onsite and available to DCFS staff at all times in order to complete investigations. *Id*. DCFS clarified all violations identified must be corrected. *Id*. Safari McHenry continued to have daycare licensing violations. *Id*. ¶ 52.

On November 1, 2013, DCFS sent Ourth a notice of refusal to renew McHenry's license. *Id*. ¶ 53. On November 8, 2013, McHenry requested an administrative appeal.

*Id.* On May 21, 2015, McHenry filed a "section 383.90(h) surrender", surrendering its daycare license pursuant to the rules. *Id.* ¶ 55. A final administrative decision was subsequently issued finding that: (1) the daycare was voluntarily surrendered, and (2) the administrative matter was deemed abandoned. *Id.*

*Safari Mt. Prospect I*

Safari Mt. Prospect I operated as a daycare center from 1999 through 2017. *Id.* ¶ 56. Various DCLRs visited the center beginning in 2001 for annual license monitoring visits, license renewal monitoring visits, to monitor corrective plans created with the center to correct substantiated violations, and to investigate licensing complaints. *Id.* ¶¶ 58-60. Between 2001 and 2017, numerous daycare licensing violations occurred, and numerous corrective plans were created to correct those violations. *Id.* ¶ 61. On July 7, 2014, DCFS notified the Director of Safari Mt. Prospect I and Ourth of its intent to refuse to renew the center's daycare license. *Id.* ¶ 62. The letter notified them that the action was the result of licensing violations and failure to maintain minimal standards as prescribed by DCFS. *Id.* Mt. Prospect I requested an administrative appeal. *Id.* While the appeal was pending, the daycare continued to violate licensing standards. *Id.* ¶ 63.

On July 27, 2017, the Director of DCFS issued a Final Administrative Decision adopting and incorporating the ALJ's findings of facts and conclusions of laws, including the ALJ's upholding of the Department's refusal to renew Mt. Prospect I's daycare license. *Id.* ¶ 64. The ALJ specifically found that DCFS proved "operations at [Mt. Prospect I] endangered children who were placed at Safari by their

11

parents/caretakers... The violations are continuous, serious and dangerous to children. Safari has been given numerous occasions to fix the deficiencies." *Id*. ¶ 64.

*Safari Mt. Prospect II*

Safari Mt. Prospect II daycare's license was effective from July 2019 through July 2022. *Id*. ¶ 65. The center closed in June 2021 due to lack of funding from INCCRRA. *Id*.

*Safari Palatine*

Safari Palatine operated as a daycare center from 2007 through October 2016. *Id*. ¶ 68. Palatine voluntarily surrendered its license without cause on October 31, 2016. *Id*.

*Safari Streamwood*

Safari Streamwood operated as a daycare center from November 2010 through June 2017. *Id*. ¶ 72. Various DCLRs visited Streamwood to monitor corrective plans and investigate licensing complaint reports. *Id*. ¶¶ 73-74. Between January 31, 2011, and December 12, 2014, there were numerous documented violations of the daycare licensing standards, and numerous corrective plans created in order to correct those violations. *Id*. ¶ 75.

On December 12, 2014, DCFS notified Safari Streamwood's Director and Ourth of its intent to refuse to renew the center's daycare license. Streamwood requested an administrative appeal of the notice. *Id*. ¶ 76. The center continued to have numerous violations during the appeal, and DCFS continued to put the center on corrective plans to correct the violations. *Id*. ¶ 77.

On June 2, 2017, the Director of DCFS issued a Final Administrative Decision adopting and incorporating the ALJ's findings of fact and conclusions of law upholding the Department's decision to refuse to renew the Streamwood license. *Id.* ¶ 78. The ALJ found that "Safari violated the Child Care Act and failed to comply with the Licensing Standards from the time it received its permit to operate until April, 29, 2015", and that the "violations [were] continuous, serious and dangerous to children." *Id.*

To summarize: Plaintiffs voluntarily surrendered their license, moved out of their location and ceased operations, or lost funding to operate in 9 (nine) of their 12 (twelve) locations.[3] As to the remaining three locations, (East Dundee, Mt. Prospect I and Streamwood) the Plaintiffs exercised their right to an administrative review process. In each of these instances an Administrative Law Judge affirmed DCFS's decision to refuse to renew Plaintiffs' license (Mt. Prospect I and Streamwood) or the decision to revoke the license (East Dundee). *Id.* ¶¶ 30, 64, 78. Defendants move for summary judgment on the remaining Equal Protection class-of-one claim. [313].

---

[3] (1) Safari Belvedere (individual Defendants: DCFS supervisors Joel Lamz and Jodi Golembiewski); (2) Safari Bensenville (individual Defendants: DCLR Beth Girardier); (3) Safari Cary (individual Defendants: Lamz and DCLRs Frank Neuman, Leslie Parello-Horton, Golembiewski); (4) Safari Hanover Park; (5) Safari Highland Park (individual Defendants: Supervisor Stany D'Souza, DCLR Mary Livorsi); (6) Safari Kensington (individual Defendants: DCFS supervisor Shirley Penny and DCLRs Edie Washington-Gurley, Jose Alex Medina, Girardier); (7) Safari McHenry (individual Defendants: RLA Richard Alexander, Lamz, Neuman, Parello-Horton, CPS investigator Robert Musial, investigator Courtney Marshall); (8) Safari Mt. Prospect II (individual Defendants: DCFS supervisor Sherrye Hampton and DCLR Gail Williams); (9) Safari Palatine (individual Defendants: DCFS Assistant Deputy Denice Murray, DCLRs Gwen Amber, Medina). *Id.* ¶¶ 2, 6, 11-14, 35, 38-41, 43-48, 66-67, 69-71.

## ANALYSIS

### I.    Class-of-one Equal Protection

Defendants renew their argument that they are entitled to summary judgment because: (1) Plaintiffs were not treated differently from similarly situated daycare centers, and (2) there was a conceivable rational basis for any difference in treatment. [314] at 6. Plaintiffs respond that this matter is one of the rare cases where animus is readily apparent and the Court can therefore relax the "similarly situated requirement". [325] at 7. The Court agrees with the Defendants.

The Equal Protection Clause of the Fourteenth Amendment bars government classification of any private citizen "for arbitrary and irrational purposes," even when that person is not a member of a protected class. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To prevail on a class-of-one theory, Plaintiffs must show: (1) they were "intentionally treated differently from others similarly situated," and (2) there is no rational basis for the difference in treatment." *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024). "Class-of-one claimants carry a heavy burden," *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021). Courts only sustain such claims on "rare occasions." *Hammond*, 107 F.4th at 698, "to avoid turning every squabble over municipal services, of which there must be tens or even hundreds of thousands every year, into a federal constitutional case." *Brunson v. Murray*, 843 F.3d 698, 708 (7th Cir. 2016) (quoting *Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), aff'd, 528 U.S. 562 (2000)) (internal quotation marks omitted).

14

As for the first prong, the alleged comparator should be directly comparable in all material respects. *Navratil v. City of Racine*, 101 F.4th 511, 523 (7th Cir. 2024) (quoting *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010)). Whether comparators are similarly situated is often a question of fact, but summary judgment is warranted when "no reasonable factfinder could find the requirement is met." *FKFJ*, 11 F.4th at 588. Then, to meet the second prong, Plaintiffs must negate "*any* reasonably conceivable state of facts that could provide a rational basis" for the disparate treatment, even though it may not be the actual basis. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (emphasis added). "It is only when courts can hypothesize *no rational basis* for the action that allegations of animus come into play." *Hammond,* 107 F.4th at 698. *See also Chicago Studio Rental, Inc., v. Illinois Dep't of Com.*, 940 F.3d 971, 980 (7th Cir. 2019) ("If we can come up with a rational basis for the alleged action, that will be the end of the matter—animus or no") (internal citation omitted). The Seventh Circuit recently emphasized that if a conceivable rational basis exists for the defendant's action, the "claim *must* fail." *See Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 879 (7th Cir. Feb. 14, 2025) (emphasis added).

The Court requested further briefing relying largely on *Geinosky*, where the Seventh Circuit found that the plaintiff pled a class-of-one claim when he alleged he was treated intentionally different than others similarly situated, without identifying a comparator. *Geinosky*, 675 F.3d at 748. Upon reflection, the Court erred in requiring more briefing. *Geinosky* was decided at the pleading stage. *Id.* at 746, 749 (reversing

the district court's dismissal of plaintiff's Equal Protection class-of-one claim); *see also FKFJ*, 11 F.4th at 590 (distinguishing *Geinosky* because it occurred at a different procedural stage). Plaintiffs at *this* stage must be able to present similarly situated comparators to evaluate the claim. They have utterly failed in this regard. Instead, Defendants have presented the Court with undisputed evidence of proper actions they took to ensure Safari's compliance with licensing requirements. Where Safari appealed certain decisions that individual Defendants took, administrative law judges affirmed those actions, explaining that Safari's numerous and continuous violations were serious and warranted the action taken by the agency. The Court finds that the undisputed facts establish a rational basis for Defendants to decline to renew the license for Safari Mt. Prospect I and Streamwood and to revoke the license for East Dundee. Here, it is undisputed that these Defendants engaged in monitoring and regulatory activities as required by the law, and that monitoring provides a rational basis to support their conduct. As to the nine locations that Plaintiffs abandoned because they lost funding or lost their lease, there is not a basis to find the individual Defendants responsible for those outcomes. Those individual Defendants are entitled to judgment as a matter of law.

In sum, Plaintiffs' claim fails for two reasons: (1) they have not identified any meaningful comparators—they have not provided the Court with any other daycare centers, visited by the same DCLRs, with similar violations (*i.e* staff to child ratio violations, unqualified staff, corrective plans, similar process from corrective plan to closure) which resulted in similar non-renewal or revocation of their daycare licenses.

16

If the Court cannot meaningfully compare Plaintiffs to another center, the analysis can end there. *See Bell v. Dupperrault*, 367 F.3d 703 (7th Cir. 2010) (affirming grant of summary judgment where plaintiff could not show others similarly situated under a class-of one claim). Plaintiffs' claim also fails because (2) there is a conceivable rational basis for each of the Defendants' actions. *Waukegan Potawatomi Casino, LLC,* 128 F.4th at 871.

Because (1) Plaintiffs failed to provide a meaningful comparator, and (2) Defendants provided a rational basis for each action they took, the Court grants summary judgment on the class-of-one claim.

## II. Qualified Immunity

Defendants argue that they are entitled to Qualified Immunity. [314] at 14. Because the Court has granted Defendants summary judgment on the Equal Protection class-of-one claim, the Court declines to reach this argument.

### CONCLUSION

For the stated reasons, Defendants' motion for summary judgment [313] is granted. Civil case terminated. Judgment to enter.

E N T E R :

Dated: July 28, 2025

MARY M. ROWLAND
United States District Judge

17